MGD

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Lee Jones, Sr., | No. CV 18-04872-PHX-MTL |
| Plaintiff, | |
| v. | **ORDER** |
| Samantha Garcia, | |
| Defendant. | |

Before the Court is Defendant Correctional Officer (CO) Samantha Garcia's post-trial Motion for Judgment as a Matter of Law [and] Conditional Motion for a New Trial. (Doc. 210.) Plaintiff, a prisoner in the Arizona Department of Corrections, Rehabilitation, and Reentry (ADCRR), has filed a Response (Doc. 231), and Defendant has filed a Reply (Doc. 237).

The Court will deny the Motion.

**I.  Background**

The Court held a jury trial in this case from March 21, 2022, to March 23, 2022, on Plaintiff's claim that he was denied due process before he was assigned to maximum custody. On March 22, 2022, pursuant to Federal Rule of Procedure 50, Defendant orally moved for judgment as a matter of law as to the sufficiency of the evidence. (Doc. 189.) The Court denied the oral motion. (*Id.*)

After deliberation, the jury returned a unanimous verdict in Plaintiff's favor, finding that Defendant Garcia violated Plaintiff's Fourteenth Amendment due process rights and

awarded Plaintiff $1 in nominal damages and $25,000 in punitive damages after determining that Defendant acted maliciously, oppressively, or in reckless disregard of Plaintiff's rights. (Doc. 191.) On March 24, 2022, Judgment was entered in favor of Plaintiff and against Defendant. (Doc. 199.) On April 21, 2022, Defendant filed the pending Motion for Judgment as a Matter of Law [and] Conditional Motion for a New Trial. (Doc. 210.)

## II. Defendant's Motion for Judgment as Matter of Law

### A. Legal Standards

#### 1. Federal Rule of Civil Procedure 50

Federal Rule of Civil Procedure 50(a) allows a court to enter judgment as a matter of law ("JMOL") on an issue if it finds that "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the nonmoving party. If a party has made a motion for JMOL at trial that the court denied that party may make a renewed motion for JMOL within 28 days of entry of judgment. Fed. R. Civ. P. 50(b). In ruling on a Rule 50(b) motion, the court may "(1) allow judgment on the verdict . . . ; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

In reviewing a renewed motion for JMOL, a court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Barnard v. Theobald*, 721 F.3d 1069, 1075 (9th Cir. 2013). To grant the motion, a court must determine that "'the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Id.* (quoting *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2005)). A court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted).

Further, a court must always remain conscious that "[t]he jury is the constitutional tribunal provided for trying facts in courts of law." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021-22 (9th Cir. 2008) (quoting *Berry v. United States*, 312 U.S. 450, 453 (1941)).

### 2. Due Process

It is well-settled that placement in maximum security segregation units implicates a liberty interest requiring due process protections. *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005). A prisoner may be deprived of his liberty interest as long as he is accorded the proper procedural protections. It is also well-settled that, for the initial decision to place a prisoner in maximum custody, due process is generally satisfied if the prisoner is given written notice of the factual basis for the placement and an opportunity to be heard. *Id.* at 225-27; *Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

### B. Defendant's Subjective Intent

Defendant argues that a procedural due process claim requires proof of some mens rea beyond mere negligence, e.g., either deliberate indifference or actual intent. (Doc. 210 at 2.) Defendant contends that Plaintiff tried to establish that Defendant held a retaliatory animus toward him due to a prior incident, but the jury heard no direct or circumstantial evidence of animus. (*Id*. at 2-4.)

This argument is without merit because, as Plaintiff points out in his Response, two jury questions support that the jury found evidence that Defendant's actions constituted more than negligence. Question 1 of the Jury Verdict Form asked the jury, "Did Defendant Garcia act or fail to act in a way that violated Mr. Jones's Fourteenth Amendment right to due process?" (Doc. 191 at 2.) Question 3 asked, "Did Defendant Garcia act maliciously, oppressively, or in reckless disregard of Mr. Jones's rights?" (*Id*. at 3.) The jury answered "yes" to both questions, and evidence in the record supports those answers.

For example, Defendant was asked at trial what training she received on due process protections, and she testified "That was the classification training we went to at Central Office for three days which was the basic max packet process. You offer the 48 hours. You allow the statements, the testimonies, blah, blah, blah, and then you finish the process." (Doc. 204 (Trial Transcript) at 74:9-12.)[*] Defendant further testified that she put

---

[*] The citation refers to the document and page number generated by the Court's Case

- 3 -

into ADCRR's AIMS computer system that Plaintiff was given 48 hours' notice of the hearing and "We had a max hearing for [Plaintiff]." (*Id*. at 90:21—91:4.) And Defendant documented in the Maximum Custody Placement form that she and Plaintiff attended Plaintiff's hearing when, in fact, Defendant did not attend any hearing for Plaintiff and was only told by CO III Rothlisberger that he had conducted a hearing. (*Id*. at 44:7-25, 45:16-17, 99:1-16; Trial Exhibit 2.) Plaintiff testified he never received the notice, would never refuse to sign a maximum custody packet because that would waive his appeal rights, he did not attend any hearing, and the first time he learned he was being considered for maximum custody was when he was moved to maximum custody. (Doc. 203 at 45:2-13, 45:21—46:1-13; Doc. 204 at 123:16-25, 124:12-14, 21-22.) Other than the Maximum Custody Placement form signed by Defendant, and Defendant's hearsay testimony that Rothlisberger told her he conducted the hearing, there is no evidence in the record that a maximum custody hearing ever took place.

In addition, ADCRR's Regional Operations Administrator, Stacy Crabtree, who "oversees . . . classification actions," testified that it would be a violation of ADCRR policies and procedures, which were in place to ensure due process protections, "if there were not two witnesses there when the refusal [to sign the max custody packet] occurred." (Doc. 203 at 80:23-25, 144:2-3.) Crabtree testified that the requirement to have two staff members document and sign that an inmate refused to sign the max custody notice acts "as a check and balance to make sure that there is two witnesses to the refusal" and "to validate the refusal to sign." (*Id*. at 142:21—143:5.)

Plaintiff also points to the parties' stipulated facts as evidence of Defendant's mens rea. (Doc. 231 at 2.) Those stipulations included that Defendant typed up the maximum custody packet for Plaintiff, Defendant did not serve the maximum custody packet on Plaintiff, Defendant signed forms that stated Plaintiff refused to sign that he had received the maximum custody packet even though Defendant had no first-hand knowledge whether

Management/Electronic Case Filing system.

- 4 -

Plaintiff was ever served the packet, and Defendant did not attend Plaintiff's hearing. (*Id.*, citing Doc. 157 at 3-4.)

The parties also presented very different testimony about an incident in July 2018 regarding a box of Plaintiff's property with Defendant testifying she felt threatened, her "safety was in jeopardy," and she yelled at Plaintiff to "Get the F out of my office." (Doc. 203 at 42:6—43:18; Doc. 204 at 72:13—73:19 and 34:10-12.) The jury could weigh the differing testimony about this encounter, which occurred just a few months before the maximum custody proceedings, and find that Defendant did harbor some animus toward Plaintiff.

Viewing this evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor, this evidence is sufficient to support the jury's verdict that Defendant acted with intention or deliberate indifference to Plaintiff's due process rights.

### C.    Punitive Damages

Defendant argues the jury heard no evidence to support an award of punitive damages, that there was no evidence to suggest Defendant acted maliciously toward Plaintiff or in reckless disregard of his constitutional rights, and that her testimony that she harbored no ill will toward Plaintiff was uncontradicted. (Doc. 210 at 5.)

Whether punitive damages are warranted is an issue reserved for the jury. *See Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 16 (1991) (noting that, with respect to punitive damages, "[t]his has been always left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case") (quotation omitted); *Smith v. Wade*, 461 U.S. 30, 48, 54, 56 (1983) ("punitive damages are awarded in the jury's discretion").

The jury was instructed that it may only award punitive damages if they find that Defendant's conduct that harmed Plaintiff "was malicious, oppressive or in reckless disregard of" Plaintiff's rights. (Doc. 190 at 21.) The instructions state that conduct is malicious if accompanied by ill will, spite, or for the purpose of injuring Plaintiff, that

conduct is oppressive if Plaintiff's rights were violated by, for example, misusing or abusing authority or power or by taking advantage of some weakness, disability or misfortune of Plaintiff, and conduct is in reckless disregard of Plaintiff's rights if it reflects complete indifference to Plaintiff's rights or if Defendant acts "in the face of a perceived risk that her actions will violate Plaintiff's rights under federal law." (*Id.*)

Based on the same evidence that supported the jury's verdict, and because the Court may not make credibility determinations or weigh the evidence, there was sufficient evidence for the jury to conclude that Defendant exhibited conduct that was malicious, oppressive or in reckless disregard of Plaintiff's rights, thereby warranting punitive damages.

### D. Qualified Immunity

As at summary judgment, Defendant argues she is entitled to qualified immunity. (Doc. 210 at 9.)

Qualified immunity protects a public official from suit under § 1983 "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A clearly established right is one in which "every reasonable official would have understood that what he was doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation and citation omitted). "[C]learly established law should not be defined at a high level of generality" but "must be particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552 (2017) (internal citation and quotation marks omitted). "While we do not require a case on all fours, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020) (quoting *al-Kidd*, 563 U.S. at 741).

"Qualified immunity is an affirmative defense that the government has the burden of pleading and proving." *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017) (citing *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)). "In evaluating a renewed

qualified immunity motion under Rule 50(b) after a jury trial, we analyze the motion based on the facts established at trial, viewing the evidence in the light most favorable to the nonmoving party, and drawing all reasonable inferences in favor of the nonmoving party." *Tan Lam v. City of Los Banos*, 976 F.3d 986, 997 (9th Cir. 2020) (citations omitted).

The first prong of the qualified immunity analysis is satisfied here by the jury's finding that Defendant violated Plaintiff's Fourteenth Amendment rights. Moreover, Defendant's argument goes to the second prong of the qualified immunity analysis, and the Court must therefore determine whether the unlawfulness of Defendant's conduct was clearly established at the time.

Defendant states that Plaintiff argued at trial that the reason Plaintiff did not get notice or a hearing was because Defendant signed a document saying Plaintiff "refused his max packet when she did not personally witness him refusing it" and that Defendant violated his due process rights "by filing false information with the Department of Corrections stating that [Plaintiff] had a hearing and she had been the one who attended it." (Doc. 210 at 8.) Defendant argues there is no case with similar facts that would place her on notice that signing a form without firsthand knowledge would violate the constitutional rights of an inmate. (*Id*. at 9.) Defendant argues in her Reply that defining the right at issue no longer requires a credibility determination, as the Court found at summary judgment, because the parties stipulated that Defendant had no firsthand knowledge whether the max custody packet was served, and she did not attend the hearing. (Doc. 237 at 6, citing Doc. 157 at 3.)

Defendant continues to frame the right at issue as she did at summary judgment, as if she were merely negligent, and fails to account for the jury's findings at trial. Two jury instructions are particularly relevant to the qualified immunity analysis. The first is the "Procedural Due Process—Elements" instruction that says in order to prove "the defendant deprived the plaintiff of his Fourteenth Amendment right to due process, the plaintiff must prove" that Defendant "denied him notice and an opportunity [to] be heard regarding his transfer to maximum custody" and in doing so "acted intentionally or with deliberate

indifference as to whether her actions would deprive the plaintiff of his due process rights." (Doc. 190 at 17.) The instructions state that Plaintiff may prove Defendant acted "intentionally" in this case "by showing that she intended to deny him notice and opportunity to be heard regarding his transfer to maximum custody." (*Id*.) The instructions define "deliberate indifference" as a "conscious choice to disregard the consequences of one's acts or omissions." (*Id*.) The jury was further instructed it would not be enough for Plaintiff to only "prove that Ms. Garcia negligently or accidentally deprived him of his due process rights." (*Id*.)

The "Section 1983 Claim—Causation" instruction states:

> A person deprives another of a constitutional right, within the meaning of section 1983, if she does an affirmative act, participates in another's affirmative act, or omits to perform an act which she is legally required to do that causes the deprivation of which complaint is made. A person could be held liable where they are just one participant in a sequence of events that give rise to a constitutional violation, if their participation as integral to that violation. The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.

(*Id*. at 18.)

Defendant's framing of the issue as mere negligence or an accidental deprivation of Plaintiff's due process rights is contrary to the jury's instruction that they could not find a due process violation if Defendant only "negligently or accidentally deprived [Plaintiff] of his due process rights." The jury did find that Defendant "acted intentionally or with deliberate indifference as to whether her actions would deprive the plaintiff of his due process rights." Defendant's Motion essentially asks the Court to overturn the jury's findings that Defendant was aware that her actions violated Plaintiff's due process rights and return to the evidence presented at the summary judgment stage. This would violate the Ninth Circuit's instruction that when evaluating a renewed qualified immunity motion under Rule 50(b), the motion is analyzed based on the facts established at trial with the

evidence viewed in the light most favorable to Plaintiff, the nonmoving party, and drawing all reasonable inferences in favor of Plaintiff. *Tan*, 976 F.3d at 997.

The stipulations at trial that Defendant was not present when the max custody notice was purportedly delivered to Plaintiff or at the hearing are no longer relevant in light of the jury's findings that Defendant acted intentionally or with deliberate indifference. Whether or not she was present at these events does not preclude the jury finding that she was an essential participant in the violation of Plaintiff's due process rights. This is supported by the "Causation" jury instruction that a person could be held liable where they are just one participant in a sequence of events that give rise to a constitutional violation, if their participation as integral to that violation. Drawing all reasonable inferences in Plaintiff's favor, the jury could find, at a minimum, that Defendant was a participant in a sequence of events that gave rise to the constitutional violation and that her participation was integral to that violation.

The summary judgment Order did identify certain questions of fact—whether Defendant was present when the max custody packet was allegedly delivered or at the hearing—which precluded a grant of qualified immunity to Defendant at that time. (Doc. 133 at 31.) In light of the additional evidence presented at trial, such as Defendant's training on due process protections, Stacy Crabtree's testimony, the jury instructions, and the findings by the jury, the Court is not limited to the issues it identified in the summary judgment Order but must review the entire record to determine anew whether Defendant is entitled to qualified immunity.

It was firmly established by 2005 that a prisoner has a right to notice and a hearing when being considered for maximum custody. *See Wilkinson v*, 545 U.S. at 224. A prison official falsely claiming that the prisoner received notice of a maximum custody proceeding, which causes the hearing to take place without the prisoner's involvement, and then affirming that the prisoner refused to sign the post-hearing packet, which permits the maximum custody recommendation to take place without any due process protections, necessarily deprives the prisoner of this clearly established right. Although it is unlikely

that any previous case dealt with the exact facts presented in this case, given that the verification process required to ensure a prisoner receives notice and a hearing may differ by state or institution, the contours of the right to receive notice prior to the substantive hearing and the opportunity to participate and present a defense at the hearing was clearly established. *See Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (for qualified immunity purposes, "the contours of the right must be sufficiently clear that [at the time the allegedly unlawful act is taken] a reasonable official would understand that what he is doing violates that right" and "in the light of pre-existing law the unlawfulness must be apparent"). A reasonable official would understand that falsely signing documents intended to ensure a prisoner's due process rights are protected during maximum custody proceedings, and those falsely signed documents triggered further maximum custody proceedings resulting in the prisoner's placement in maximum custody without the prisoner's knowledge or participation, violates a prisoner's due process rights of notice and hearing.

Accordingly, Defendant is not entitled to qualified immunity.

For the above reasons, the Court will deny Defendant's Motion for Judgment as a Matter of Law.

**III.   Defendant's Conditional Motion for a New Trial**

    **A.   The Weight of the Evidence Against the Jury's Verdict**

Defendant argues that the jury's verdict is against the clear weight of the evidence and that the Court should therefore grant a new trial. (Doc. 210 at 10-11.)

There are significant differences between a Rule 50 motion for judgment as a matter of law and a Rule 59(a) motion for a new trial. A court may not grant a Rule 50 motion if there is substantial evidence to support the verdict. "The existence of substantial evidence does not, however, prevent the court from granting a motion for new trial pursuant to [Rule 59(a)] if the verdict is against the clear weight of the evidence." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). In deciding a Rule 59(a) motion, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and

need not view the evidence from the perspective most favorable to the prevailing party." *Id*.

Defendant argues that her calm demeanor at trial demonstrates she did not act with the requisite mens rea for culpability and overcomes all the training she received and the prison's explicit policies requiring two signatures to confirm Plaintiff received notice of his max custody packet. The Court has already discussed the evidence that supported the jury's finding that Defendant acted with intention or deliberate indifference, and Defendant's argument about her demeanor at trial is insufficient to show that the jury's verdict was against the clear weight of the evidence.

### B.     Juror Question, Punitive Damages, Special Interrogatory

None of Defendant's remaining arguments have merit. Defendant first contends that the Court's response to the jury's question about who would pay any punitive damage award was error. (Doc. 210 at 11-12.) But Defendant does not challenge the Court's jury instructions regarding Defendant's liability and, as a result, the jury was not "interpreting the law incorrectly." *Crowley v. EpiCept Corp.*, 883 F.3d 739, 750 (9th Cir. 2018) (citation omitted). There was no basis to give the jury additional information that would have potentially caused more confusion.

Defendant also seeks a new trial on the ground that Plaintiff's "cumulative" "improper conduct" referencing the ADCRR was "egregious." (Doc. 210 at 12-16.) But Defendant does not point to any individual statement suggesting the ADCRR would pay any punitive damages award. Defendant's reliance on *Larez v. Holcomb*, 16 F.3d 1513 (9th Cir. 1994) is therefore misplaced.

Finally, there was no error in failing to submit a written interrogatory to the jury in light of the jury instructions given. *See Hung Lam v. City of San Jose*, 869 F.3d 1077, 1086 (9th Cir. 2017) (explaining that "the decision whether to submit special interrogatories to the jury is a matter committed to the discretion of the district court") (internal citation and quotation omitted).

For all these reasons, Defendant's motion for a new trial must be denied.

**IT IS ORDERED** that Defendant's Motion for Judgment as a Matter of Law [and] Conditional Motion for a New Trial (Doc. 210) is **denied**.  This action must remain closed.

Dated this 19th day of December, 2022.

Michael T. Liburdi
United States District Judge